## WILLIAM H. DAYTON v. MAE A. DAYTON.[1]

May 28, 1920.

No. 21,714.

**Divorce — evidence of wilful desertion insufficient.**
> The finding of wilful desertion on the part of defendant, within the meaning of the divorce law, is not sustained by the evidence.

Action for divorce in the district court for Koochiching county. In her answer defendant prayed that she be granted an absolute divorce from plaintiff on the ground of cruel and inhuman treatment and be allowed attorney fees, court expenses and alimony. The case was tried before Wright, J., who made findings and ordered judgment in favor of plaintiff and that he pay $700 to defendant as alimony. From an order denying her motion for a new trial, defendant appealed. Reversed.

*Jesse Van Valkenburg,* for appellant.

*W. V. Kane,* for respondent.

TAYLOR, C.

Action for divorce. The court found that defendant had wilfully deserted plaintiff for more than one year immediately prior to the filing of the complaint, and directed the entry of judgment dissolving the marriage on payment by plaintiff to defendant of the sum of $700 as

1Reported in 177 N. W. 931.

alimony.   Whether the finding of wilful desertion is sustained by the evidence is the only question presented.

Plaintiff has resided at International Falls or in its vicinity for many years and has acquired considerable property at that place.   He became acquainted with defendant in 1909 while she was teaching school near his homestead.   They became engaged in 1911.   In 1913 she was working in western Canada and by agreement they met at Spokane, Washington. At his suggestion, they went to Oregon and defendant made homestead entry of a quarter section of government land which plaintiff paid a locator to find for them, but could not take himself as he had used his homestead right in Minnesota.   Plaintiff built a "claim shanty" on the land and cleared some of it while defendant resided with a neighbor.   On October 25, 1913, about two months after making the homestead entry, they were married.   They lived in the "claim shanty" from the time of their marriage until July, 1914, when plaintiff returned to Minnesota to look after his property at International Falls.   Defendant remained on her homestead, for the purpose of completing the residence necessary to make commutation proof and made such proof late in the fall of 1914.   Plaintiff sent her sufficient money to make this proof and pay for the land, but none for her personal use.   She left the homestead and went to Portland, Oregon, where she obtained employment in various capacities during the winter, and in the spring went to San Francisco, California, where she secured employment to do sewing and mending in an orphanage.   Although how or when the arrangement was made is not clear, it had been arranged that plaintiff and defendant would visit the World's Fair held in San Francisco in 1915.   He came in July and defendant joined him at once.   He remained about three weeks. He says that he wanted defendant to go back home with him by the southern route as his ticket was over that route, but that she wanted to go by way of Portland as her trunk was at Portland, and that he left for Minnesota, understanding that she would come as soon as some treatment- which she wished to take at San Francisco was completed. She says that she wanted to return with him, but that instead of allowing her to do so he told her she had better keep her job in San Francisco.   Sometime in January, 1916, or perhaps earlier (the date is

146 M.—4.

not given) he wrote her to come home, but sent her no money with which to come. She bought a ticket to Minneapolis without taking a berth in the sleeper and says she had only 35 cents left when she reached there. At Minneapolis she obtained $50 from her mother with which she purchased a winter coat and paid her fare to International Falls where she arrived on January 28, 1916.

Plaintiff owned two dwelling houses in International Falls, both of which were occupied by tenants to whom he had rented them. He also owned 80 acres of timber land about five miles from town. He had contracted to furnish the county 100 cords of wood and to furnish another party a considerable quantity of pulpwood, and was living in a shanty on the timber land engaged in getting out this wood when defendant arrived. She went directly to this shanty and lived with him there until March 18, 1916. The weather was very severe. The shanty was built of one thickness of boards covered on the outside and roof with tar paper or roofing, and contained little in the way of furniture or household utensils. There were no neighbors except two or three men engaged in getting out timber on another tract of land about half a mile distant. Defendant was not satisfied with this shanty as a place of abode and wanted plaintiff to fix it up or exchange the land for a neighboring tract which was on a road and had a house on it. Plaintiff concedes that this shanty was not a fit habitation for defendant, and states that he told her that if she wished she could stay at the Rex hotel in International Falls until they could get possession of one of their own houses. She denies that he made any such proposition or ever intimated that they would occupy one of his town houses. After being with him a few days she spoke of teaching school and began writing for a position. He seems to have acquiesced in this proposal and mailed these letters for her. She finally accepted an offer of a school in Montana. Although he says that he told her she had better stay, he makes no claim that he opposed her going.

She started for Montana on March 18, 1916, and he furnished her $40 for the trip. She returned this money to him at the end of her first term of school. He says she sent it to him to keep for her; she says she sent it because he wrote for it. After leaving for Montana she wrote

him frequently until this action was commenced; she says as often as twice a month and this is not denied. He wrote her an occasional letter in the summer of 1916, but with the exception of one letter in reference to a divorce written in June, 1917, never wrote to her or answered any of her letters after August, 1916. He states that when she left for Montana he expected that "when she got ready * * * she would come back," and that he always has been and still is ready and willing for her to come back, but further states that he never asked her to come back, that she never refused to come back, and that after she went to Montana he never furnished her any money for any purpose, although she wrote frequently that she needed money. She states that she has always been ready and willing to return at any time that he would provide her a home, and that the reason she did not return was because he never asked her to and never offered her a home. Both disclaim any serious quarrel while living together. Both state that they never had sexual intercourse. Plaintiff says that defendant would not permit it because she was unwilling to bear children. Defendant says that she never refused but that a physical defect made it impossible. Defendant disliked International Falls as a place of residence and while in Montana tried to induce plaintiff to come to Montana, but he made no reply to her letter. She subsequently asked him to let her study pharmacy, and proposed that they go into business together somewhere outside of International Falls, but he made no answer to this suggestion. She returned from Montana to Minneapolis where she secured employment for a time, and then went to Chicago where she again secured employment.

The record contains two of her letters written in 1916, four written in 1917, and five written in 1918 which plaintiff offered in evidence as tending to show desertion. When we bear in mind that these are only a few, and doubtless the most extreme, of the many letters that she wrote; that plaintiff answered none of them except to write in June, 1917, that he was willing to institute proceedings for a divorce in order to give her her freedom; that he made no reply to her suggestion that they live elsewhere than in northern Minnesota which place she disliked, and that her continuous appeals to him to see her and talk matters over were all ignored, it is not surprising that we find the complaints

of his attitude and conduct toward her sometimes couched in bitter language, and also find statements to the effect that they were not husband and wife to each other, that she did not wish to live with a husband who did not care for her, and that his refusal to see or communicate with her seemed to make a severance of their relations unavoidable. It is true that the letters in evidence were seldom couched in a conciliatory tone, but nowhere does she express any dislike of plaintiff, although she expresses dislike of the place where he lives. Nowhere does she refuse to live with him or express an intention not to do so. In some she expresses a wish to live with him if he cares for her, and in the last one which she wrote before he placed the summons and complaint in the hands of the sheriff for service, she made a plain appeal for an invitation to return to him.

In our opinion the evidence, considered in the light of the attending circumstances, will not justify a finding of wilful desertion by defendant for one year immediately preceding the filing of the complaint within the meaning of the divorce law, and the order appealed from is reversed.